**RECORD NOS. 12-4552(L); 12-4773**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# DAMON DOCK, JR.,
# DAMON DOCK,

*Defendants – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ABINGDON**

————————————

**BRIEF OF APPELLANT**

————————————

**Wayne D. Inge**
LAW OFFICE OF
  WAYNE D. INGE
**P. O. Box 631**
**310 South Jefferson Street**
**Roanoke, VA  24004**
**(540) 342-3100**

**Michael T. Hemenway**
ATTORNEY AT LAW
**801 East Jefferson Street**
**Charlottesville, VA  22902**
**(434) 296-3812**

*Counsel for Appellant*
  *Damon Dock, Jr.*

*Counsel for Appellant*
  *Damon Dock*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA 23219
804-249-7770  ♦  www.gibsonmoore.net

## TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES..........................................ii

INTRODUCTION...................................................1

JUSRISDICTIONAL STATEMENT......................................1

STATEMENT OF ISSUES...........................................3

      I.   JUNIOR.................................................3

      II.  CORKY..................................................4

STATEMENT OF CASE.............................................4

      I.   JUNIOR.................................................4

      II.  CORKY..................................................5

STATEMENT OF FACTS............................................8

SUMMARY OF THE ARGUMENT......................................10

ARGUMENT....................................................10

    STANDARD OF REVIEW.......................................10

    DISCUSSION..............................................11

    STANDARD OF REVIEW.......................................15

    DISCUSSION..............................................15

    STANDARD OF REVIEW.......................................19

    DISCUSSION..............................................19

CONCLUSION..................................................24

THE APPELLANTS REQUEST ORAL ARGUMENT.........................25

CERTIFICATE OF COMPLIANCE

CERTIFICIATE OF FILING AND SERVICE

i

## TABLE OF AUTHORITIES

PAGE(S):

CASES:

*Estelle v. Gamble*,
    429 U.S. 97, 102, 97 S. Ct. 285,
    50 L. Ed. 2d 251 (1976)..................................12

*Ewing v. California*,
    538 U.S. 11, 123 S. Ct. 1179 (2003)......................11

*Gall v. United States*,
    552 U.S. 38, 128 S. Ct. 586,
    169 L. Ed. 2d 445 (2007)................................13

*Glasser v. United States*,
    315 U.S. 60, 62 S. Ct. 457,
    86 L. Ed. 680 (1942)....................................16

*Graham v Florida*,
    560 US __, 130 S. Ct. 2011,
    176 L Ed 2d 825 (2010)..................................12

*Harris v. United States*,
    536 U.S. 545, 122 S. Ct. 2406,
    153 L. Ed. 2d 524 (2002)................................13

*Kimbrough v. United States*,
    552 U.S. 85, 128 S. Ct. 558,
    169 L. Ed. 2d 481 (2007)................................13

*Miller v. Alabama*,
    __ U.S. __, 132 S. Ct. 2455 (2012)...................12, 14

*Rita v. United States*,
    551 U.S. 338, 127 S. Ct. 2456,
    168 L. Ed. 2d 203 (2007)................................13

*Roper v. Simmons*,
    543 U.S. 551, 125 S. Ct. 1183,
    161 L. Ed. 2d 1 (2005)..................................12

*Trop v. Dulles*,
    356 U.S. 86, 78 S. Ct. 590,
    2 L. Ed. 2d 630 (1958)..................................12

*United States v. Banks*,
    10 F.3d 1044 (4th Cir. 1993)..........................15, 18

*United States v. Beidler*,
    110 F.3d 1064 (4th Cir. 1997).............................16

*United States v. Booker*,
    543 U.S. 220, 125 S. Ct. 738,
    160 L. Ed. 2d 621 (2005).................................13

*United States v. Burgos*,
    94 F.3d 849 (4th Cir. 1996)..............................16

*United States v. C.R.*,
    792 F. Supp. 2d 3443 (E.D. N.Y. 2011)................12, 14

*United States v. Goff*,
    907 F.2d 1441 (4th Cir. 1990).........................19, 20

*United States v. Hines*,
    717 F.2d 1481 (4th Cir. 1983).............................17

*United States v. LaMarr*,
    75 F.3d 964 (4th Cir. 1996)..............................20

*United States v. Moore*,
    666 F.3d 313 (4th Cir. 2012)..........................10-11

*United States v. Stewart*,
    256 F.3d 231 (4th Cir. 2001).............................18

*United States v. Stockton*,
    349 F.3d 755 (4th Cir. 2003).............................18

*United States v. Urbanik*,
    801 F.2d 692 (4th Cir. 1986).........................15, 18

*United States v. Uwaeme*,
    975 F.2d 1016 (4th Cir. 1992).............................19

*United States v. Weaver*,
    659 F.3d 353 (4th Cir. 2011).............................11

*Weems v. United States*,
    217 U.S. 349, 30 S. Ct. 544,
    54 L. Ed. 793 (1910).....................................12

STATUTES:

18 U.S.C. § 2......................................................2

18 U.S.C. § 924(c)................................................2

18 U.S.C. § 3231..................................................2

18 U.S.C. § 3553.................................................14

18 U.S.C. § 3553(a).......................................10, 13, 14

21 U.S.C. § 841(a)(1).............................................2

21 U.S.C. § 841(b)(1)(A)............................2, 4, 11, 14

21 U.S.C. § 846...................................................2

21 U.S.C. § 851...................................................4

28 U.S.C. § 1291..................................................3

CONSTITUTIONAL PROVISION:

US CONST. AMEND. VIII............................10, 11, 12, 14

SENTENCING GUIDELINES:

USSG § 2D1.1......................................................6

USSG § 3E1.1......................................................6

USSG § 5G1.1(b)...................................................5

## INTRODUCTION

This is a consolidated appeal involving a father and son with very similar names, which are easy to confuse.

Damon Dock, the father, is the Appellant in Case No. 12-4773, and is represented by Michael T. Hemenway.

Damon Dock, Jr., the son, is the Appellant in Case No. 12-4552, and is represented by Wayne D. Inge.

Case No. 12-4552 and Case No. 12-4773 were consolidated with No. 12-4552 being designated the lead case by Order filed on 31 October 2012 (Doc. 23, No. 12-4552; Doc. 11, No. 12-4773).

During the proceedings in the District Court, Damon Dock, the father, was usually referred to as "Corky". Damon Dock, Jr., the son, was usually referred to as "Junior".

As neither of the undersigned was the Appellants' trial counsel in the District Court, to avoid confusion in this Brief, Damon Dock, the father, will be hereinafter referred to as "Corky", and Damon Dock, Jr., the son, will be hereinafter referred to as "Junior".

## JUSRISDICTIONAL STATEMENT

On 25 July 2011, Corky and Junior and four other individuals were named in a nine count superseding indictment in the United States District Court for the Western District of Virginia, Abingdon Division, Case No. 1:11-cr-00026. (J.A., Vol. I at 35)

Corky was only charged in Counts Two and Nine of the Indictment. Junior was only charged in Count Two of the Indictment.

Count Two of the Indictment charged both Corky and Junior with conspiracy to possess with the intent to distribute five kilograms or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A). (J.A., Vol. I at 37)

Count Nine of the Indictment charged Corky and another defendant with the use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c). (J.A., Vol. I at 39)

The District Court had jurisdiction of this criminal matter pursuant to 18 U.S.C. § 3231.

Corky and Junior pleaded not guilty and were tried by a jury from 23 April through 26 April 2012. One other co-defendant, Chris Avery, pleaded not guilty and was also tried with Corky and Junior. Before the adjournment of the jury trial on 25 April 2012, Chris Avery entered a guilty plea and the trial continued without him. (J.A. Vol. I at 23, Document 220)

On 26 April 2012 both Corky and Junior were found guilty of Count Two. Corky was found not guilty of Count Nine. (J.A., Vol. I at 24, Documents 230 and 231)

On 16 July 2012 Junior was sentenced to a term of confinement of 240 months and a term of supervised release of 10 years. (J.A., Vol. I at 25, Document 246)

Judgment in a Criminal Case was filed in Junior's case on 17 July 2012. (J.A., Vol. II at 448)

A Notice of Appeal was timely filed in Junior's case on 18 July 2012. (J.A., Vol. II at 454)

On 24 September 2012 Corky was sentenced to a term of confinement of 132 months and a term of supervised release of 10 years. (J.A., Vol. I at 30, Document 327)

Judgment in a Criminal Case was filed in Corky's case on 25 September 2012. (J.A., Vol. II at 613)

A Notice of Appeal was timely filed in Corky's case on 27 September 2012. (J.A., Vol. II at 619)

This consolidated appeal is from final orders of the District Court, which adjudicated all issues by and between the Appellants and the Appellee.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.    JUNIOR

1. The District Court because it believed that it not have the authority to do so erred in denying Junior's motion to be sentenced to a term less than the mandatory minimum of 20 years.

3

II.   CORKY

2.   Corky's conviction of conspiracy should be reversed because the government's evidence at trial was insufficient as a matter of law to prove the existence of a conspiracy.

3.   The District Court erred in the amount of drugs attributed to Corky at sentencing.

**STATEMENT OF CASE**

I.   JUNIOR

Junior's Presentence Investigation Report was prepared on 15 June 2012 and revised on 10 July 2012. (J.A. Vol. III at 634) Based on a total offense level of 34 and a criminal history category of II, Junior's advisory guideline range for imprisonment was determined to be 168 to 210 months. (J.A. Vol. III at 640 – 641, 643)

However, Junior had previously been convicted in state court of two felony drug offenses. (J.A. Vol. II at 442 – 443 and Vol. III at 640)

In this regard, on 7 September 2011 the government filed a Sentencing Enhancement Information, which stated that upon conviction Junior would face a mandatory minimum term of twenty years imprisonment with a potential maximum sentence of life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851. (J.A. Vol. I at 14, Document 86)

As a result, notwithstanding the advisory guideline range of 168 to 210 months, a mandatory minimum sentence of 20 years was applicable pursuant to USSG § 5G1.1(b). (J.A. Vol. III at 643)

The government filed one objection and Junior filed two objections to his Presentence Investigation Report. (J.A. Vol. III at 646) One of Junior's objections was resolved favorably by the Probation Officer. As to the remaining unresolved objections, the District Court denied both, as it intended to sentence Junior to the 20 year mandatory minimum. (J.A. Vol. II at 439 – 430)

At sentencing Junior moved the District Court to sentence him to less than the mandatory minimum. (J.A. Vol. II at 440 – 441) The District Court denied this motion observing "[b]y virtue of the statutory mandatory minimum sentence which I am obligated to impose in this case, I will impose that sentence. I will state for the record that were there not a mandatory minimum sentence required in this case, I would not sentence the defendant to a sentence I am about to impose." (J.A. Vol. II at 444)

II.  CORKY

A Presentence Investigation Report was prepared by U.S. Probation Officer Scott H. Belcher. (J.A. Vol. IV at 652) Mr. Belcher concluded that the drug weight attributable to Junior,

Corky, and another co-defendant, Hope Leonard, was all the same due to the fact that all three individuals lived together during the conspiracy. (J.A. Vol. IV at 657)

Mr. Belcher found that the evidence revealed that each individual was not only a user of crack but also a distributor. He found that Amy Moser provided statements that she and another co-defendant, Chris Berry, traded and bought crack from Corky, Junior, and Hope Leonard, and that it varied as from whom they actually purchased the drugs.

In addition, Mr. Belcher found that Chris Berry provided statements that indicated that from December 2010 to May 2011, he obtained crack from the Corky, Junior, and Hope Leonard on a regular basis. Based upon the uncorroborated statements and testimony of these cooperating witnesses, the probation officer concluded that Corky should be held accountable for at least 840 grams but less than 2.8 kilograms of crack. (J.A. Vol. IV at 657)

In the Presentence Investigation Report, Corky received a Base Offense Level of 34 pursuant to section USSG § 2D1.1. He found that Corky had not clearly demonstrated acceptance of responsibility for the offense pursuant to USSG § 3E1.1, and received no reduction of offense level. (J.A. Vol. IV at 658)

Trial counsel for Corky, Daniel R. Bieger, noted objections to the Presentence Investigation Report. The first objection,

Objection #1, objected to Paragraphs 18 and 23 of the Presentence Investigation Report in that Corky should not be held accountable for a drug weight of at least 840 grams but less than 2.8 kilograms of crack. (J.A. Vol. IV at 668) In Response, the Probation Officer noted that Corky's drug weight was based primarily on the statements given by Chris Berry, and that Berry had provided grand jury testimony and trial testimony at defendant's trial that he had purchased a majority of his drugs from Corky. Berry estimated that he traded and bought at least 2 kilograms of crack from Corky. Based on this, there was no change made to the presentence report. (J.A. Vol. IV at 668)

Corky also filed an objection, in which he objected to Paragraph 8 of the Presentence Investigation Report in that the total amount of crack cocaine found at the Speedway Inn on 19 May 2011 was 5.7 grams instead of 55 grams. This seizure of crack cocaine was one of the few pieces of evidence obtained by the police in this case and used at trial. Corky argued that the relatively small amount of cocaine was more typical of the quantity of drugs he possessed and used. The Presentence Investigation Report was amended to reflect the correct drug weight. (J.A. Vol. IV at 666)

On 17 September 2012, Corky filed a Sentencing Memorandum (J.A. Vol. II at 471) and a Motion for Variance. (J.A. Vol. II at 483)

### STATEMENT OF FACTS

In late 2010, law enforcement began receiving information concerning various individuals engaged in drug distribution in Bristol, Virginia, Bristol, Tennessee, as well as surrounding areas. Through the use of confidential informants, surveillance, search warrants, and interviews, the investigation was able to identify several participants believed to be involved, including Corky, Junior, Chris Avery, Maggie Welch, Chris Berry, and Hope Leonard.

At trial, Maggie Welch testified that she was involved in selling cocaine base with Chris Avery in the local area. (J.A. Vol. I at 195 – 198)

Evidence also showed that on 19 May 2011, law enforcement officers served an arrest warrant on Chris Berry at the Speedway Inn, in Bristol, Virginia. Upon entering the hotel room, officers observed a quantity of crack cocaine. A subsequent search revealed 20 individually wrapped packages totaling 5.7 grams of crack cocaine, digital scales, baggies, and drug paraphernalia. Authorities arrested Corky, Junior, Chris Berry, Hope Leonard, and Amy Moser, all of whom were present in the hotel room. In a later interview with Corky, the officers were advised that there was a gun in the hotel room. (J.A. II at 335 – 336)

At trial, co-defendants, Maggie Welsh and Chris Berry, testified on behalf of the government with the hope and expectation that they would receive a reduction in their sentence. (J.A. Vol. I at 190, 254-255)

The evidence showed that authorities conducted several interviews with Chris Berry during the course of their investigation. Chris Berry testified during the trial of Corky and Junior. According to Chris Berry, he had been trading stolen merchandise with Corky in exchange for crack cocaine from December 2010 to May 2011. He indicated that he had obtained crack from either Corky or Junior or Hope Leonard on an almost daily basis during this time frame. He testified that these transactions usually took place at Hope Leonard's home where she and Corky were living at the time. Chris Berry testified that he predominantly bought 8-ball to half ounce quantities each time, but had seen Corky with as much as six to seven ounce quantities. He also testified that he purchased crack from Junior during this same time frame, and reported that they all used crack together. (J.A. Vol. I at 264 – 265)

During the investigation, law enforcement agents also obtained statements from Corky, who advised that he had been present when Chris Avery obtained a kilogram of crack from an individual in Johnson City, Tennessee, but denied any involvement. Corky also reported that he understood that Hope

Leonard was purchasing ounce quantities of crack per week from the same person for a four week period in 2011. (J.A. Vol. II at 399 – 400)

Neither Corky nor Junior testified or called any witnesses at trial. Corky introduced two exhibits.

## SUMMARY OF THE ARGUMENT

The District Court did have the authority to sentence Junior to a term less than the mandatory minimum of 20 years because of the Eighth Amendment prohibition on Cruel and Unusual Punishment and the parsimony requirements of 18 U.S.C. § 3553(a).

Corky asserts that the evidence was insufficient for the jury to convict him of the charge beyond a reasonable doubt.

Corky argues that the District Court erred in regard to enhancing the base offense level due to the calculated drug weight.

## ARGUMENT

STATEMENT OF ISSUES NO. 1: The District Court, because it believed that it not have the authority to do so, erred in denying Junior's motion to be sentenced to a term less than the mandatory minimum of 20 years.

### STANDARD OF REVIEW

In the context of sentencing, a district court's legal determinations are reviewed *de novo. United States v. Moore*, 666

F.3d 313, 320 (4th Cir. 2012). The interpretation of a statute is reviewed *de novo*. *United States v. Weaver*, 659 F.3d 353, 356 (4th Cir. 2011).

## DISCUSSION

The District Court did have the authority to sentence Junior to a term less than the mandatory minimum of 20 years.

The Eighth Amendment prohibition on Cruel and Unusual Punishment authorizes the District Court to impose a lesser sentence than the mandatory minimum contained in 21 U.S.C. § 841(b)(1)(A).

In relevant part, 21 U.S.C. § 841(b)(1)(A) states as follows:

> If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment.

The Eighth Amendment to the United States Constitution states, in relevant part:

> Excessive bail shall not be required...nor cruel and unusual punishments inflicted.

The Eighth Amendment imposes "a narrow proportionality principle" that "applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179 (2003).

Congress has the power to establish the punishment for the offenses it creates, but categorical mandatory minimum sentences

11

are nonetheless subject to the Eighth Amendment's prohibition against cruel and unusual punishment.

As the Supreme Court stated in *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012) in the course of invalidating mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes:

> The Eighth Amendment's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." *Roper*, 543 U.S., at 560, 125 S. Ct. 1183. That right, we have explained, "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned'" to both the offender and the offense. *Ibid*. (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 (1910)). As we noted the last time we considered life-without-parole sentences imposed on juveniles, "[t]he concept of proportionality is central to the Eighth Amendment." *Graham*, 560 U.S., at ___, 130 S. Ct., at 2021. And we view that concept less through a historical prism than according to "'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality opinion)). *Miller v. Alabama*, __ U.S. at __, 132 S. Ct. at 2463.

A recent district court decision discusses the cruel and unusual punishment clause in the context of statutory mandatory minimums. In *United States v. C.R.*, 792 F. Supp. 2d 3443 (E.D. N.Y. 2011), the court held that the statutory minimum five-year sentence of imprisonment for distribution of child pornography amounted to cruel and unusual punishment in violation of Eighth Amendment for a defendant who was developmentally immature.

12

In *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the Supreme Court held that the Sentencing Guidelines are advisory, not mandatory, and that district courts have discretion in fashioning a sentence under Section 3553(a).

The later cases of *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), and *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007) confirm that district courts have flexibility and must exercise discretion to fashion an appropriate sentence based on the individual facts of a given case.

In *Harris v. United States*, 536 U.S. 545, 570-71, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) Justice Breyer, concurring in part and in the judgment, wrote:

> Mandatory minimum sentences are fundamentally inconsistent with Congress' simultaneous effort to create a fair, honest, and rational sentencing system through the use of Sentencing Guidelines. Unlike Guideline sentences, statutory mandatory minimums generally deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency. They rarely reflect an effort to achieve sentencing proportionality – a key element of sentencing fairness that demands that the law punish a drug "kingpin" and a "mule" differently. They transfer sentencing power to prosecutors, who can determine sentences through the charges  they decide to bring, and who thereby have reintroduced much of the sentencing disparity that Congress created Guidelines to eliminate.

13

This Court is urged to find that under the rationale of *Miller v. Alabama* and the analysis in *United States v. C.R.*, the Eighth Amendment's prohibition on cruel and unusual punishment permitted the District Court to sentence Junior to a term less than the 20 year mandatory minimum sentence provided by 21 U.S.C. § 841(b)(1)(A).

Further the mandatory minimum sentence provision of 21 U.S.C. § 841(b)(1)(A) conflicts with the sentencing requirements of 18 U.S.C. § 3553.

18 U.S.C. § 3553(a) mandates that: the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2).

Paragraph 2 of 18 U.S.C. § 3553(a) provides: the court, in determining the particular sentence to be imposed, shall consider–

> (2) the need for the sentence imposed–
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Therefore, this Court should hold that the mandatory minimum sentence provisions of 21 U.S.C. § 841(b)(1)(A) did not

14

prohibit the District Court from sentencing Junior to a sentence sufficient, but not greater than necessary.

STATEMENT OF ISSUES NO. 2: Corky's conviction of conspiracy should be reversed because the Government's evidence at trial was insufficient as a matter of law to prove the existence of a conspiracy.

STANDARD OF REVIEW

The sufficiency of evidence of a conspiracy is evaluated by whether "any rational trier of fact could have found the essential elements of the conspiracy here charged in the indictment beyond a reasonable doubt." *United States v. Banks*, 10 F.3d 1044, 1051 (4th Cir. 1993). This court must determine whether the evidence, considered in the light most favorable to the government, would have allowed a reasonable jury to find the existence of a single conspiracy. *See United States v. Urbanik*, 801 F.2d 692, 695 (4th Cir. 1986).

DISCUSSION

Corky asserts that the evidence was insufficient for the jury to convict him of the charge beyond a reasonable doubt. Corky moved for judgment of acquittal asserting that (a) the evidence presented by the government failed to demonstrate that he participated in the conspiracy as charged in the indictment, and instead, proved nothing more than a buyer-seller relationship between him and the witnesses for the government;

15

and (b) the evidence presented by the government failed to prove beyond a reasonable doubt the existence of a single conspiracy, especially given the unsubstantiated testimony of the witnesses offered by the government, and their motivation to testify untruthfully in order to obtain more lenient sentences.

Corky recognizes that a defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). A jury verdict will be upheld "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L. Ed. 680 (1942). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996).

The primary fact witnesses who testified for the government were all either drug users, drug dealers, or convicted felons. Most all of the witnesses were indicted co-conspirators pleading guilty to the federal conspiracy charge hoping to earn a future sentencing reduction.

The primary piece of evidence to support the allegation of Corky's drug dealing was contraband seized by the police when they were arresting a co-defendant. Specifically, on 19 May

2011, law enforcement officers were serving an arrest warrant on Chris Berry at the Speedway Inn, in Bristol, Virginia. Upon entering the hotel room, officers observed a quantity of crack cocaine. A subsequent search revealed 20 individually wrapped packages totaling 5.7 grams of crack cocaine, digital scales, baggies, and drug paraphernalia. Authorities arrested Corky, Junior, Chris Berry, Hope Leonard, and Amy Moser, all of whom were present in the hotel room.

At trial, the government called co-defendants, Chris Berry and Maggie Welsh, as witnesses to establish a verbal history of Corky's drug dealing during the time frame alleged in the conspiracy. Each testified under terms of a plea agreement wherein they could get a reduced sentence by testifying against Corky.

There was no concrete evidence linking all of the defendants together and the government failed to prove an existing single conspiracy between Corky, Chris Avery, and the others. The government bears the burden of proving the single conspiracy charged in the indictment. *United States v. Hines*, 717 F.2d 1481, 1489 (4th Cir. 1983). The sufficiency of evidence of a single conspiracy is evaluated by whether "any rational trier of fact could have found the essential elements of the conspiracy here charged in the indictment beyond a reasonable

17

doubt." *United States v. Banks*, 10 F.3d 1044, 1051 (4th Cir. 1993).

On appeal, this court must determine whether the evidence, considered in the light most favorable to the government, would have allowed a reasonable jury to find the existence of a single conspiracy. *See United States v. Urbanik*, 801 F.2d 692, 695 (4th Cir. 1986).

In order for the government to prove a conspiracy, there must be "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *United States v. Stewart*, 256 F.3d 231, 249 (4th Cir. 2001). This Circuit has emphasized that "a single conspiracy exists where there is one overall agreement, or one general business venture." *United States v. Stockton*, 349 F.3d 755, 762 (4th Cir. 2003).

Based on a thorough examination of the government's evidence at trial, it is clear that a rational jury could not have found the elements of the single charged conspiracy beyond a reasonable doubt.

The government called various witnesses implicating the Corky, all who had involvement in using or selling drugs. They included convicted felons testifying with the hope of obtaining

a sentencing reduction for favorable testimony to the United States or some other benefit.

It is clear that, even when viewed in the light most favorable to the Government, the evidence pertaining to Dock was insufficient to establish his involvement in an overall conspiracy that existed and his conviction must be reversed.

STATEMENT OF ISSUES NO. 3: The District Court erred in the amount of drugs attributed to Corky at sentencing.

### STANDARD OF REVIEW

The factual findings of the District Court and calculation of drug weight at sentencing are reviewed for clear error. *United States v. Uwaeme*, 975 F.2d 1016, 1018 (4th Cir. 1992). The government bears the burden of proof for determining the quantity of drugs used for sentencing. *United States v. Goff*, 907 F.2d 1441, 1444 (4th Cir. 1990).

### DISCUSSION

Corky argues that the District Court erred in regard to enhancing the base offense level due to the calculated drug weight. Corky argues that the District Court erred in assigning a base offense level of 34 based on the calculation of drug weight.

The factual findings of the District Court and calculation of drug weight at sentencing are reviewed for clear error. *United States v. Uwaeme*, 975 F.2d 1016, 1018 (4th Cir. 1992).

The government bears the burden of proof for determining the quantity of drugs used for sentencing. *United States v. Goff*, 907 F.2d 1441, 1444 (4th Cir. 1990).

Although estimates are permitted, estimates used to determine the amount of drugs attributed to a defendant for sentencing should be made conservatively. *United States v. LaMarr*, 75 F.3d 964, 973 (4th Cir. 1996).

On 26 April 2012, Corky was convicted of engaging in a conspiracy to distribute cocaine base (crack) from 1 January 2010 to 7 June 2011. The jury's verdict included a finding that 280 grams or more were attributed to Corky. He was acquitted of using or carrying a firearm in furtherance of the conspiracy.

The Corky's Presentence Investigation Report attributed 840 grams but less than 2.8 kilograms of cocaine base "due to the fact that all three individuals (Junior, Corky, and Hope Leonard) lived together during the conspiracy. (J.A. Vol. IV at 657, paragraph 18).

Corky provided evidence that he lived with Hope Leonard for only approximately seven weeks during the conspiracy, that being between 19 April 2011 (when he was released from the Haysi Regional Jail) and 7 June 2011 (when he was arrested for conspiracy). Corky argued, therefore, that the premise for attributing 840 grams to 2.8 kilograms to him was inaccurate.

Corky filed objections to the Presentence Investigation Report dated 21 June 2012. At his sentencing he provided records from various correctional facilities to show that he was incarcerated as follows: 1 January 2010 – 24 March 2010 at the Red Onion State Prison (Exhibit 1); 24 March 2010 – 30 June 2010 at the Bland Correction Center (Exhibit 2); 5 April 2011 – 11 April 2011 at the Abington Regional Jail (Exhibit 3); and 11 April 2011 – 19 April 2011 at the Haysi Regional Jail (Exhibit 4). (J.A. Vol. II at 475 – 481) In addition, Corky provided evidence that from 30 June 2010 until 4 April 2011, he resided with Ericka Austin on Magnolia Street in Bristol, Virginia. (J.A. Vol. II at 520 – 521)

At his sentencing on 24 September 2012, Corky argued that from 5 April 2011 to 19 April 2011, he was incarcerated first in the Abington Regional Jail and then the Haysi Regional Jail (Exhibits 3 & 4) and then resided with Hope Leonard for only approximately seven weeks out of the 74 weeks alleged in the conspiracy. Accordingly, the District Court erred in attributing to him a quantity of drugs in excess of the jury verdict on the grounds that he and Hope Leonard lived together during the conspiracy.

Corky argued that the probation officer erred in the assumption that he should be attributed with those drugs based

on the fact that they were all living together because it was an incorrect assumption. (J.A. Vol. II at 536 – 537)

Corky also argued at sentencing that the statements given by Chris Berry as to the amount of drugs he was getting from him simply did not add up in term of dollars. (J.A. Vol. II at 536 – 537) Corky presented argument to the District Court that if a kilo of cocaine costs $30,000, then for Berry to obtain 3 kilos he would have to pay at least $90,000, an amount he clearly was not capable of obtaining, since his primary source of income was selling stolen goods which generally got only 10% of their value. (J.A. Vol. 11 at 525)

Corky argued that the evidence presented supported only the lower amount attributed to him by the jury (280 grams) and that the District Court clearly erred in attributing the amount set forth in the Presentence Investigation Report.

The District Court found that Corky had been convicted of conspiracy in a joint conduct situation such that he was responsible not only for what was directly attributable to him, but also what he reasonably would know what others in the conspiracy had distributed or had reason to know what others had distributed during the course of the conspiracy. (J.A. Vol. II at 543)

Although the District Court found that Corky had been convicted by the jury of conspiracy and that he had admitted at

the sentencing hearing that he had been an eye witness to Chris Avery purchasing a kilogram of crack cocaine, the District Court also recognized that Corky had denied any participation in the purchase by Avery of the kilogram of cocaine. (J.A. Vol. II at 543) The District Court erred in concluding that simply because the jury found him guilty of participating in the conspiracy that he should necessarily be tied to that amount. Also, in establishing the relevant drug weight attributed to Corky, the District Court found the testimony of co-defendant, Chris Berry, credible but *imprecise* (emphasis added). (J.A. Vol. II at 544)

The District Court erred in concluding that the range of drugs attributed to Corky was at least 840 grams. In the instant case, the District Court relied on drug amount estimates based upon the recollection of cooperating informants who had been convicted or were awaiting sentencing for participation in the alleged conspiracy. These witnesses and the evidence used to support these findings were hardly reliable. These estimates were inherently unreliable at their source because there was little or no physical evidence to corroborate the testimony.

In addition, the informants and cooperating co-conspirators had much to gain by attributing as much conduct as possible to the Corky. Based upon all of the above, the District Court erred in accepting the government's calculation of drug amount.

23

## CONCLUSION

Junior prays that his sentence be vacated and remanded to the District Court for resentencing with directions that the District Court may impose a sentence less than the 20 year mandatory minimum, if it be so advised.

Corky prays that the conspiracy conviction be overturned given that the evidence of a conspiracy was insufficient as a matter of law.

Alternatively, Corky prays that as the District Court erred in its calculation of drug weight attributable to him at sentencing, the findings of the Presentence Investigation Report in this regard should be vacated and this matter remanded to the District Court for correction and resentencing.

THE APPELLANTS REQUEST ORAL ARGUMENT.

DAMON DOCK, JR.
DAMON DOCK
By Counsel

/s/ WAYNE D. INGE_____
WAYNE D. INGE
Counsel for Damon Dock, Jr. (Junior)
P.O. Box 631
310 South Jefferson Street
Roanoke, VA 24004
540/342-3100
540/301-0841 (FAX)
ingewd@aol.com (Email)
VSB: 32220
WVB: 1852

/s/ MICHAEL T. HEMENWAY
MICHAEL T. HEMENWAY
Counsel for Damon Dock (Corky)
801 East Market Street
Charlottesville, VA 22902
434/296-3812
434/296-4229 (FAX)
hemenwaylaw@aol.com (Email)
VSB: 29820

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed.
     R. App. P. 32(a)(7)(B) because:

          this brief contains <u>5,136</u> words, excluding the parts
          of the brief exempted by Fed. R. App. P.
          32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed.
     R. App. P. 32(a)(5) and the type style requirements of Fed.
     R. App. P. 32(a)(6) because:

          this brief has been prepared in a mono-spaced typeface
          using <u>Microsoft Word</u> in <u>12 point Courier New</u>.


                         <u>/s/ Wayne D. Inge</u>
                         Wayne D. Inge

                         *Counsel for Appellant*
                            Damon Dock, Jr. (Junior)


                         <u>/s/ Michael T. Hemenway</u>
                         Michael T. Hemenway

                         Counsel for Appellant
                            Damon Dock (Corky)



Dated:  April 19, 2013

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on April 19, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jennifer R. Bockhorst
Zachary T. Lee
OFFICE OF THE UNITED STATES ATTORNEY
180 West Main Street, Suite B19
Abingdon, VA  24210-0000
(276) 628-4161

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219